UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO CAVIN #326204,

    Plaintiff,                                Hon. Paul L. Maloney

v.                                               Case No. 1:18-cv-1354

LESLIE BRYANT, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 14). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted.

**BACKGROUND**

The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On February 4, 2018, Plaintiff and a group of fellow prisoners were returning to their housing unit when they observed Corrections Officer Tyler Moreno removing items from a prison mailbox. Moreno "tossed certain documents back into the mailbox and other documents on the officer's podium." In response, on February 6, 2018, Plaintiff "drafted a complaint on behalf of all prisoners in the housing unit." Plaintiff provided this complaint to his "Unit Rep with the understanding and agreement that it would be given to [Assistant Resident Unit Supervisor (ARUS) Leslie Bryant] to investigate."

-1-

Later that same day, Moreno ordered Plaintiff to return to his housing unit. Upon returning to the unit, Plaintiff was confronted by Moreno, who had in his possession Plaintiff's television. Moreno told Plaintiff that his television was being confiscated because of the complaint Plaintiff authored regarding Moreno reading prisoner mail two days previous. Moreno then asked Plaintiff, "So you're writing grievances on me now?" Immediately thereafter Moreno stated, "you know what happens to people who file grievances on me? I fuck their lives up." Moreno later charged Plaintiff with a misconduct violation for possession of a television.

On February 9, 2018, Moreno accused Plaintiff of possessing two winter hats. Plaintiff denied this accusation, but Moreno nonetheless confiscated Plaintiff's only winter hat and charged him with a misconduct violation for possessing two hats. Moreno then stated to Plaintiff, "let's see what kinda grievance you file on this one." On February 12, 2018, Bryant found Plaintiff guilty of this charge, despite the lack of evidence supporting such, and sentenced Plaintiff to five days toplock and ten days of loss of privileges. Approximately two weeks later, Plaintiff encountered Moreno, who asked Plaintiff, "Are we good now? Is this shit over?" Plaintiff responded, "you provoked everything. I never had a problem with you." Moreno then stated to Plaintiff, "as long as you know how this goes. You fuck with me, I fuck with you."

On June 13, 2018, Plaintiff requested to speak with an ARUS. Moreno told Plaintiff that he could leave his cell if his cell door opened. Plaintiff's cell door was subsequently opened three times, but each time Plaintiff exited his cell, Moreno "ordered

-2-

him to lockdown." Plaintiff responded by filing a grievance against Moreno. On June 29, 2018, Moreno entered Plaintiff's cell and told Plaintiff and his cellmate that, if they did not give him a "bag of chips," he would "destroy their cell." Plaintiff reported this conduct to an ARUS after which Moreno "annihilated" Plaintiff's cell. In response, Plaintiff filed three grievances against Moreno.

Plaintiff initiated this action against Moreno and Bryant alleging retaliation and conspiracy to retaliate. Plaintiff requests declaratory and monetary relief. Defendants move for partial summary judgment on the ground that Plaintiff has not properly exhausted all his claims. Specifically, Defendants argue that, while Plaintiff has exhausted his retaliation claims against Defendant Moreno, he has failed to properly exhaust his conspiracy claims or his retaliation claim against Defendant Bryant.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance

with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 articulates the grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, which must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶¶ P, V. The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at

¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have submitted copies of ten grievances Plaintiff initiated between January 5, 2017, and June 22, 2018, and which he pursued through all three steps of the grievance process. (ECF No. 15-3 at PageID.88-144). Four of these grievances were initiated in 2017, well before the events giving rise to this action and, therefore, cannot serve to exhaust any of Plaintiff's current claims.[1] (ECF No. 15-3 at PageID.125-44). As for the six remaining grievances, three concern matters unrelated to Plaintiff's current claims.[2] (ECF No. 15-3 at PageID.94-98, 105-14). The other three grievances allege retaliation by Defendant Moreno, but make no mention of Defendant Bryant and, moreover, make no mention of allegations of conspiracy between Moreno and Bryant.[3] (ECF No. 15-3 at PageID.99-104, 115-24).

---

[1] Grievances: (1) IBC 17-01-0045-14a; (2) IBC 17-02-0319-28j; (3) IBC 17-08-1833-28e; and (4) IBC 17-10-2293-15a.

[2] Grievances: (1) IBC 18-05-1367-15a; (2) IBC 18-06-1463-25d; and (3) IBC 18-06-1618-15a.

[3] Grievances: (1) IBC 18-02-0489-17b; (2) IBC 18-02-0457-17z; and (3) IBC 18-07-1752-17a.

In response to the present motion, Plaintiff advances three arguments, none of which are persuasive. First, Plaintiff has submitted an affidavit in which he asserts that he pursued four grievances regarding his claims against Defendants Moreno and Bryant. (ECF No. 19-1 at PageID.188-90). Three of these grievances, IBC 18-02-0489-17b, IBC 18-02-0457-17z, and IBC 18-07-1752-17a, were included as attachments to Defendants' motion. As discussed above, however, these grievances only exhaust Plaintiff's retaliation claims against Defendant Moreno. The fourth grievance identified by Plaintiff, IBC 18-07-1703-17z, was not one of the grievances identified by Defendants as having been pursued through all three steps of the grievance process. Plaintiff has neither submitted a copy of this grievance nor presented evidence that he pursued this grievance through all three steps. The only evidence Plaintiff has presented regarding this grievance is contained in his affidavit in which he asserts that he asserted this grievance against Defendant Moreno alleging retaliation. (ECF No. 19-1 at PageID.189). Plaintiff does not allege that this grievance was asserted against Defendant Bryant or alleged that Moreno and Bryant engaged in a conspiracy.

Next, Plaintiff argues that "the MDOC grievance policy does not require prisoners to reference constitutional violations or legal theories, only the facts being grieved." (ECF No. 19 at PageID.181). While this is a reasonably accurate statement, such does not advance Plaintiff's cause because, as discussed, none of the grievances Plaintiff pursued contain facts alleging retaliation against Defendant Bryant or a conspiracy between Defendants Moreno and Bryant. Finally, Plaintiff asserts that "in addition to

the facts in the grievances, [he] spoke to each Step I grievance respondent and told them about the retaliation and conspiracy."  (ECF No. 19 at PageID.183).  Additional allegations Plaintiff may have mentioned to a grievance respondent are irrelevant, however, as pursuant to MDOC policy, Plaintiff was required to articulate his claims and allegations in the body of his Step I grievance.  Informal and unrecorded statements not consistent with the contents of a prisoner's Step I grievance cannot reasonably be said to put prison officials on notice as to a prisoner's allegations of misconduct.  To conclude otherwise would undermine and render superfluous the entire prison grievance process.

## CONCLUSION

In sum, Defendants have satisfied their burden of establishing the absence of a factual dispute on the question whether Plaintiff exhausted his claims of (1) retaliation against Defendant Bryant and (2) conspiracy against Defendant Moreno and Bryant. Accordingly, the undersigned recommends that Defendants' Motion for Partial Summary Judgment (ECF No. 14) be **GRANTED** and that Plaintiff's claims, save his retaliation claims against Defendant Moreno, be **DISMISSED without prejudice** for failure to properly exhaust administrative remedies.

Dated: June 26, 2019                                                    /s/ Phillip J. Green
                                                                                   PHILLIP J. GREEN
                                                                                   United States Magistrate Judge

## **NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice.   *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).